**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CARMEN VELAZQUEZ,

        Plaintiff,

v.   Case No. 8:22-cv-1309-JRK

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I.   Status**

Carmen Velazquez ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of degenerative osteoarthritis, radiculopathy, gastritis, and severe migraines. Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed August 4, 2022, at 120, 134, 241.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed August 4, 2022; Reference Order (Doc. No. 16), entered August 4, 2022.

On July 15, 2019, Plaintiff protectively filed the applications for DIB and SSI, alleging in both applications a disability onset date of May 22, 2019. Tr. at 205-11 (DIB), 212-19 (SSI).[2] Both applications were denied initially (the SSI application being denied because Plaintiff's income was too high to be eligible), Tr. at 120-30, 131, 132-33, 159-62 (DIB); Tr. at 149-58 (SSI), and the DIB application was denied upon reconsideration, Tr. at 134-45, 146, 147-48, 164-69.[3]

On October 29, 2020, an ALJ held a hearing, during which he heard from Plaintiff, who elected to represent herself.[4] Tr. at 83-93. At the time of the hearing, Plaintiff was forty-eight (48) years old. Tr. at 88. After the hearing, the ALJ sent interrogatories to a vocational expert ("VE") and obtained an opinion on the type of work Plaintiff might be able to perform. Tr. at 364-68. On August

---

[2] The DIB and SSI applications were actually completed on August 13, 2019. Tr. at 205 (DIB), 212 (SSI). The protective filing date for the DIB application is listed elsewhere in the administrative transcript as July 15, 2019, and the SSI protective filing date is listed in the Administrative Law Judge's ("ALJ('s)") Decision, probably erroneously, as April 17, 2020. Tr. at 120, 134 (DIB), 19 (SSI). (The ALJ recognizes that the application was denied on October 2, 2019, Tr. at 19, which makes an April 17, 2020 filing date impossible.) The filing dates are immaterial to the issues presented; for the purposes of this Opinion and Order, the undersigned assumes the same protective filing date for both applications.

[3] The administrative transcript also contains paperwork documenting administrative denials of prior-filed claims that are not at issue here.

[4] The hearing was held telephonically, with Plaintiff's consent, because of extraordinary circumstances presented by the earlier stages of the COVID-19 pandemic. Tr. at 19, 85, 201.

20, 2021, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 19-36.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council; she obtained counsel and submitted additional medical evidence and a brief authored by her counsel in support. Tr. at 2, 5-6 (Appeals Council exhibit list and orders), 8, 11-15 (letter from counsel and representative appointment forms), 42-69 (medical evidence), 203-04 (request for review), 373 (brief). On April 25, 2022, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, making the ALJ's Decision the final decision of the Commissioner. On June 7, 2022, Plaintiff commenced this action, through counsel, under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff on appeal makes two arguments: 1) the ALJ erred "in failing to develop the record regarding [] Plaintiff's mental impairments"; and 2) the ALJ erred in evaluating Plaintiff's "complaints regarding her migraine headaches." Memorandum in Opposition to the Commissioner's Decision (Doc. No. 18; "Pl.'s Mem."), filed September 7, 2022, at 2, 6, 8 (emphasis and capitalization omitted). On November 1, 2022, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of

the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 22-36. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

4

activity since May 22, 2019, the alleged onset date." Tr. at 22 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease, including cervical spondylosis and radiculopathy; degenerative osteoarthritis; gastritis; gastro-esophageal reflux disease (GERD); iron deficiency anemia; [and] migraine headaches." Tr. at 23 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 25-26 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) with the following limitations: [Plaintiff] can lift and/or carry 20 pounds occasionally, and 10 pounds frequently; stand and/or walk for six (6) hours in an eight-hour day; and sit for six (6) hours in an eight-hour day. [Plaintiff] can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. [Plaintiff] must avoid climbing ladders and scaffolds. [Plaintiff] can occasionally handle and feel with both hands. [Plaintiff] can frequently finger with both hands. [Plaintiff] must avoid working around high, exposed places and moving, mechanical parts.

Tr. at 26 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "tagger," an "attendant, laundry and dry cleaning service,"

5

and a "presser, machine." Tr. at 35 (some emphasis and citation omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 35-36. After considering Plaintiff's age ("47 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 35, such as "usher," "children's attendant," and "furniture rental consultant." Tr. at 36 (some emphasis omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from May 22, 2019, through the date of th[e D]ecision." Tr. at 36 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322

(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff argues the ALJ erred in failing to develop the record regarding her mental impairments, Pl.'s Mem. at 6-8, and in evaluating her complaints regarding the effects of her migraine headaches, id. at 8-11. The arguments are addressed in turn.

### A. Development of Record Regarding Mental Impairments

Plaintiff argues the ALJ erred by not fully developing the record as to her alleged mental impairments. Pl.'s Mem. at 6-8. According to Plaintiff, the ALJ should have "order[ed] a consultative examination regarding [] Plaintiff's psychological difficulties." Id. at 6. Plaintiff also asserts the Court should take

7

into account that the hearing was only fifteen minutes long in determining whether the record was fully and fairly developed. Id. at 8.

Plaintiff recognizes that she submitted (largely illegible) mental treatment notes from Bharminder Bedi, M.D., only after the hearing in the case, id. at 7-8, but the reality reflected in the administrative transcript is only two of Dr. Bedi's notes were submitted to the ALJ, see Tr. at 872-77. The rest of the evidence from Dr. Bedi was submitted to the Appeals Council after ALJ issued the Decision. See Tr. at 2 (Appeals Council Order), 42-53 (notes). Some of Plaintiff's argument is seemingly premised on the erroneous factual contention that the ALJ had before him all of Dr. Bedi's notes. See Pl.'s Mem. at 8. Plaintiff does not challenge the Appeals Council's denial of review in light of this evidence. See id. In the end, Plaintiff contends the ALJ should have "asked for a typed transcript of the records from Dr. Bedi, utilized a medical advisor at a supplemental hearing, ordered a consultative psychological examination, sent interrogatories to a psychiatrist or psychologist, or otherwise developed the record regarding [Plaintiff's] mental limitations." Id.

Responding, Defendant contends the ALJ did not abrogate the duty to fully and fairly develop the record. Def.'s Mem. at 5-8. Moreover, Defendant argues Plaintiff has failed to show the required prejudice that would necessitate a remand. Id.

8

Although the parties do not cite the law applicable to a claimant who proceeds without representation, because Plaintiff represented herself during the hearing before the ALJ, the undersigned provides a brief overview of the legal framework for self-represented claimants later making a "development of the record" challenge.

A claimant has a statutory right to be represented at a hearing before an ALJ. 42 U.S.C. § 406; see also Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); Smith, 677 F.2d at 828. The Commissioner "has a duty to notify [the] claimant of his or her right to [representation] before the hearing." Smith, 677 F.2d at 828 (citation omitted). Though the right to be represented may be waived by the claimant, the waiver must be knowing and voluntary. See Brown, 44 F.3d at 935; Smith, 677 F.2d at 828. "[S]uch a waiver must establish, at some point, that the claimant is properly apprised of his [or her] options concerning representation to be effective." Smith, 677 F.2d at 828 (citation and internal quotation marks omitted)

"When an unrepresented claimant unfamiliar with administrative hearing procedures appears before an ALJ, the ALJ is under an obligation to develop a full and fair record; i.e. the record must disclose that there has been a full and fair hearing." Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985) (emphasis and citation omitted). If the claimant did not validly waive the right to be represented, "the ALJ is under a 'special duty' to develop a full and fair

9

hearing by conscientiously probing into all relevant facts." Id. n.2 (citations omitted). "This duty requires, essentially, a record which shows that the claimant was not prejudiced by the lack of [representation]." Id. (quoting Smith, 677 F.2d at 829). In examining whether a claimant was prejudiced by the lack of representation, a reviewing court must ensure the ALJ "scrupulously and conscientiously probe[d] into, inquire[d] of, and explore[d] for all the relevant facts." Brown, 44 F.3d at 934-35 (quoting Smith, 677 F.2d at 829).

Conversely, if the claimant validly waived the right to be represented, the claimant must show "clear prejudice or unfairness" caused by the lack of representation to prove that he was denied a full and fair hearing.[6] Kelley, 761 F.2d at 1540 n.2 (quoting Clark v. Schweiker, 652 F.2d 399, 404 (5th Cir. 1981)). Of particular importance is "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Brown, 44 F.3d at 935. Missing medical documentation or documentation of vocational services supporting a claim of disability can be prejudicial, especially when it relates to treatment occurring

---

[6] The United States Court of Appeals for the Eleventh Circuit has stated the following regarding the two standards and their application:

> These two standards appear to differ only in degree. Both require that the ALJ fully develop the record. Both require a showing of prejudice to necessitate a remand to the [Commissioner] for reconsideration. The only discernable difference is that a more specific showing of prejudice is required if [a] claimant did not waive his [or her] right to [representation].

Kelley, 761 F.2d at 1540 n.2.

near or during the period in which the claimant is eligible for disability insurance benefits. See id.

While "[t]he [ALJ] has a duty to develop the record where appropriate[,]" the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007) (citing Doughty, 245 F.3d at 1281).

Here, Plaintiff does not challenge whether she validly waived the right to representation. See generally Pl.'s Mem. Prior to the hearing, on two occasions, the Administration sent documents to Plaintiff explaining her right to representation. Tr. at 176-77, 194-95. In a separate document entitled, "Important Notice About Representation," the Administration again advised Plaintiff of her right and listed organizations that provide free legal services (with corresponding addresses and contact information). Tr. at 178-90 (emphasis omitted). At the hearing, the ALJ advised Plaintiff of the right to representation, including how fees work in social security cases. Tr. at 85-86. The ALJ then ensured Plaintiff understood her right, and asked if she would "like to proceed today or . . . to find a representative." Tr. at 86. Plaintiff responded that she wanted to proceed. Tr. at 86.

Under the circumstances, Plaintiff validly waived her right to representation. Moreover, the ALJ did not abrogate the duty to fully and fairly

develop the record. The ALJ obtained much of the medical evidence on his own initiative. See Tr. at 339, 341, 343, 352. Because Plaintiff did not even allege a mental disorder and had no recent mental diagnosis, the Administration determined at an early stage that there was no need to develop the record further on mental impairments. Tr. at 297. At the hearing, the only mention of mental limitations was Plaintiff testifying that she "get[s] anxious" and "get[s] stressed for nothing sometimes and maybe because of the pain." Tr. at 91-92.

The ALJ gave Plaintiff the benefit of the doubt on the mental impairments, recognizing diagnoses of "generalized anxiety disorder, major depressive disorder, and bipolar disorder." Tr. at 24. The ALJ found, however, that "considered singly and in combination," the disorders "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." Tr. at 24. The ALJ then discussed in detail all of the evidence on the broad areas of functional limitation and made findings that Plaintiff had either mild or no limitation in each area. Tr. at 24-25. Later, in discussing the medical evidence as it pertained to the RFC, the ALJ summarized in detail the evidence relating to Plaintiff's alleged mental impairments, including a 2015 mental examination that had been conducted in relation to a past application for benefits. Tr. at 28, 34, 28-34. The ALJ assigned an RFC that does not contain specific mental limitations. Tr. at 26.

Plaintiff does not challenge any of the ALJ's mental findings, instead contending the ALJ should have sent her for a mental consultative examination or otherwise developed the record more on her mental impairments. But, the record contained enough evidence upon which to make an informed decision. In any event, Plaintiff has not demonstrated prejudice. The ALJ did not reversibly err. Moreover, Plaintiff does not challenge the Appeals Council's denial of review in the face of the mental treatment notes (which are largely illegible anyway).

### B. Effects of Migraine Headaches

Plaintiff next challenges the ALJ's evaluation of her complaints about the effects of her migraine headaches. Pl.'s Mem. at 9-11. According to Plaintiff, "[a]lthough the [ALJ] gives reasons for discrediting [Plaintiff's] testimony, they are not good reasons." Id. at 11. Responding, Defendant argues the ALJ gave explicit reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints about how her headaches affect her. Def.'s Mem. at 9-11.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002)

(citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his or] her doctors." Belser v. Soc. Sec. Admin., Comm'r, No. 20-12121, 2021 WL 6116639, at *6 (11th Cir. Dec. 27, 2021) (unpublished) (citing 20 C.F.R. §§ 404.1529(c)(1)-(2)); see also SSR 16-3p, 2017 WL 5180304 (SSA 2017). The Regulations in effect at the time of the ALJ's Decision provided that an ALJ "will" also consider other factors related to symptoms such as pain, including:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by

14

the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).[7]

Here, Plaintiff testified she gets "migraine headaches a lot" and she takes "migraine pills every day." Tr. at 91. She indicated the headaches occur "all day" but can "stop[] for like a couple of hours" after taking medication. Tr. at 92. According to Plaintiff, sometimes she has to "stay in bed all day" because of the headaches." Tr. at 92.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "symptoms concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 27. The ALJ adequately summarized the medical evidence, particularly as it relates to the migraine headaches. Tr. at 28. The ALJ recognized Plaintiff's reports of "daily headaches and need for rescue

---

[7] In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

medication daily." Tr. at 31. On Plaintiff's headaches, the ALJ made the following findings:

> With respect to [Plaintiff's] headaches, it is not entirely clear whether these are truly migraine headaches or headaches related to her cervical degenerative disc disease, as suggested by her primary care provider. Regardless, [Plaintiff's] allegations concerning her headaches have been consistent, including her description of the location of pain, type and severity of pain, onset, duration, occurrence, associated symptoms, and aggravating factors (SSR 19-4p). That being said, even with these headaches, [Plaintiff] consistently appears alert, oriented, and in no acute distress at her various appointments. One would expect someone experiencing headaches of the severity and frequency described by [Plaintiff] to exhibit some constitutional abnormalities. Similarly, although she reports complaints of episodes of lightheadedness and dizziness, for which she uses medication, she is consistently noted as having intact coordination and cranial nerves on examination, and there is no evidence of recurrent falls.

Tr. at 32 (citations omitted). The ALJ then included "safety precaution" measures in the RFC to account for the headaches. Tr. at 33; see Tr. at 26 (RFC).

Plaintiff does not challenge whether these findings are supported by substantial evidence, instead arguing summarily that the ALJ did not provide good reasons for the findings on her headaches. Pl.'s Mem. at 11. But, the ALJ adequately complied with the applicable authority in considering the various factors, and the ALJ's reasons for finding Plaintiff's allegations are not entirely

16

consistent are accurate and supported by substantial evidence. The ALJ did not reversibly err.

### V.   Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.   The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.   The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 22, 2023.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record